*D. W. Sanders, W. O. & J. L. Dodd, J. & J. W. Rodman, for appellees.*

---

JOHN W. MENZIES ET AL. *v.* FARMERS' BANK OF KENTUCKY.

[Abstract Kentucky Law Reporter, Vol. 3—822.]

**Indorsement of Bill for Collection.**

　　Where a bill is indorsed "Pay A B or order on account of G C & D" it operates as notice that A B holds or held it in trust for G C & D and that neither he nor his indorsers had any property in it.

**Notice to Bind Drawer and Indorser for Nonpayment.**

　　Notice of protest for nonpayment should be mailed to a drawer and indorser at his last known postoffice address and where at the time a bill or note is drawn or indorsed the party resides at a certain place the holder may presume that he resides there at its maturity and send his notice of protest accordingly unless he has received information of his change of residence. And where there is more than one postoffice where the indorser is in the habit of receiving his letters, notices may be sent to either of such addresses.

APPEAL FROM KENTON CIRCUIT COURT.

May 13, 1882.

OPINION BY JUDGE PRYOR:

.The Farmers' Bank of Kentucky brought this action upon a bill of exchange drawn by Wm. Timberlake on H. C. Timberlake in favor of John W. Menzies for $7,140, dated October 10, 1877, payable in four months. The bill was accepted by H. C. Timberlake, indorsed in blank by Menzies, delivered to Taylor & Sons, and discounted by the Farmers' Bank. A judgment by default was rendered against the acceptor, H. C. Timberlake. The drawer, Wm. Timberlake, and the indorser, John W. Menzies, made defense and a trial was had, which resulted in a verdict and judgment against them for the amount of the bill from which they prosecute this appeal. The defense relied on in the court below was: 1. That the Farmers' Bank was not the owner of the paper. 2. The want of notice as to the dishonor of the paper. As to the question of ownership, it clearly appears that the appellee, the Farmers' Bank, was the holder of the paper at the institution of the action, and from the testimony of the cashier, corroborated in every particular by others, it is evident that the appellee was the owner of the paper in good faith and had discounted it at the instance of Taylor & Sons in order to settle a debt with the Farmers' Bank for which the Taylors, individually, and H. C. Timberlake were jointly liable. There is no evidence that Taylor & Sons own the paper or have any interest whatever in it, but on the contrary the testimony conduces to show that the Taylors obtained the bill with the view of having it discounted, so that H. C. Timberlake might assume on his own account his portion of the large debt owing jointly by them to the Farmers' Bank. It appears that the Farmers' Bank held the note of the Taylors and H. C. Timberlake for $22,000 that matured in October, 1877. In payment of this note the Farmers' Bank took the note of John and James B. Taylor for $12,080, and the bill in controversy for the balance, discounting the latter paper at Taylor's instance. The large note for $22,000 was then charged to Taylor & Sons and that firm was credited by the proceeds of the note for $12,080 and the proceeds of the bill now in controversy. There is no evidence of any knowledge on the part of the Farmers' Bank as to any arrangement between these parties as to the large debt due by the Taylors and H. C. Timberlake or as to the proceeds of the bill on which the appellees have been made liable.

This paper was received from Taylor who presented it to the bank for discount and the proceeds credited in part payment of the large note for which H. C. Timberlake was liable. H. C. Timberlake, for whose accommodation the paper was drawn and indorsed, paid in this way his one-third of the large note, and it is not pretended that the appellee was entitled to the money; and the only defense made to the title of the bill or the right to the proceeds is that Taylor & Sons and not the bank own the paper. This defense is not sustained by the proof, unless the indorsement to Taylor & Sons makes that firm the owner of the paper. After it had been discounted by the bank it was sent to the banking house of Taylor & Sons for collection, with this indorsement, "Pay James Taylor & Sons, or order, for account of Farmers' Bank of Kentucky, Frankfort.

Grant Green, Cashier."

This was only an indorsement authorizing the banking house of Taylor & Sons to collect the bill for the Farmers' Bank and did not invest them with the title. "Where a bill was indorsed 'Pay J C, or order, on account of B G & S,' it was held that it operates as notice that J C held it in trust for B G & S and that neither he nor his indorsers had any property in it." Daniel on Neg. Inst. 516. So in any view of the case we think it plain that the appellee is the owner of the bill, and being the owner and holder we see no reason why the action was not properly brought against all the parties to the paper.

The remaining question to be decided is the sufficiency of the notice to the drawer and indorser of its non-payment. The bill was duly presented for payment at the banking house of Taylor & Sons, and notice of protest mailed on the same day to the drawer and indorser. The notice was inclosed to William Timberlake, Florence, Boone County, Ky. Florence was his post office at the time the bill was signed and had been for many years, and according to his own testimony he had received his mail at that post office up to the 12th of November, 1877, within three or four months of the time of protest. There is no evidence that the appellee, or its agents, or the notary knew of the change in his post office. He says in a conversation with Taylor he told him there was a grocery, post office, and blacksmith shop at Greenwood Lake on the southern road, but does not pretend

to have given him any direction to send his letters or notices to that post office, and on the other hand both Taylor and the notary swear they did not know such a post office as Greenwood Lake was in existence. "If at the time the bill or note is drawn or indorsed the party resides at a certain place the holder may presume that he resides there at its maturity and send notice accordingly." 2 Daniel on Neg. Inst. 75. The holder should be permitted to act in good faith upon the presumption of his continued residence unless he has received information of his change of residence. In this case the notary and the bankers, Taylor & Sons, knew that Florence, a town about half a mile from Wm. Timberlake's residence, had been his post office for many years. They had enclosed notices and addressed letters to him at that place and there is nothing in this record showing that they knew his post office had been changed, or that as prudent business men should have been aware of such a fact. The notice was, therefore, sufficient to charge him as drawer and the instruction for the plaintiff to the effect that he was responsible "unless after the date and discount of the paper and before the 13th of February, 1878 (the time of protest), Timberlake had changed his post office from Florence to Greenwood Station and that James Taylor & Sons, or either, or the notary, or the plaintiff knew that he had changed his post office," was properly given and left the jury to determine the only question really at issue on the question of notice to Timberlake. As to the notice given the indorser (Menzies) it appears from the testimony that there were three post offices nearer to his place of residence than the Covington post office, to which the notice was mailed. The indorser had a box in the post office at Covington and one in the office at Falmouth, and from the weight of the testimony the office to which his mail matter was generally sent seems to have been at Falmouth although there is testimony, if competent, conducing to show that notices with reference to his banking transactions were usually enclosed to him at Covington. This question it seems to us is, however, made immaterial from the testimony before us. Taylor, one of the firm of Taylor & Sons, states that he was directed by the appellant, Menzies, to enclose notices to him at Covington and that he had been in the habit of doing so for years. This is not denied by the appellee except in the statement that his mean-

ing when giving this direction was with reference to his own paper. It seems that no such explanation was given the banker, nor any limitation placed on his action with reference to such notices. The direction to send was general and to a point at which the appellant obtained mail matter, and where notices had been sent to him by the banking house of Taylor & Sons for years without complaint, and this direction having been given, it was incumbent on the appellant to show that the banker knew it applied only to paper on which the appellant was primarily liable. Leaving out of view therefore the proof as to the usual custom of the banks at Covington in sending notices to the appellant, or its competency, when offered, it is manifest that under the direction given it was Taylor's duty to enclose the notice of protest, directed to the appellant's address at the Covington post office. He owned or had a box in that office; had received notice of the maturing of his own paper from this box; had directed notices to be sent to him at that post office, and if there had been no direction we are not prepared to say that the notices were insufficient. "Where there are two or three post offices where the indorser is in the habit of receiving his letters, notices may be sent to either." 2 Daniel on Neg. Inst., § 1028. Taylor informed the notary of the directions given by the appellant, and whether so or not, if the bank had sent the notices to Falmouth, after this instruction to Taylor, it would at least be doubtful whether a recovery could be had against the indorser. Besides, the court below in an instruction given at the instance of the defendant told the jury "to disregard the evidence of Taylor as to the direction given him by the appellant, provided that they believed from the evidence that this statement of Menzies only included, and was intended to include notices of the approaching maturity of paper, held and owned by Taylor & Sons upon which Menzies was maker." This instruction was more favorable than it should have been, and certainly, leaving to the jury the question of intention on the part of the appellee when giving the direction, the issue was made as the appellant desired it should be, and we, therefore, see no reason to complain of the action of the court on this branch of the case.

The instruction controverted the exercise of a right under a general direction to send notices to a particular post office, by the

intention of the appellee, at the time the direction was given. This we think was error to the prejudice of the appellee and not to the appellant. It is also insisted that the bill was never delivered, or if delivered, was made with certain conditions not expressed on the face of the paper. The bill was delivered to Taylor and by him discounted at the Farmers' Bank, or if not it was signed by all the parties for a particular purpose, and when in the hands of Taylor was discounted by the appellee without any knowledge of a parol understanding between the parties to the bill, and being an innocent holder, the bank can not be affected by any such agreement. Wm. Timberlake's own testimony, when considered alone, did not relieve him from liability and the reading of his answer to the jury could in nowise have prejudiced the appellant, Menzies. Timberlake being liable and Menzies being the indorser the only question as to the latter was whether he had been notified of the non-payment of the bill. The refusal to permit Wm. Timberlake to state that he was only an accommodation indorser could not have changed the result, as it is evident that both of the appellants were on the paper at the instance of H. C. Timberlake and for his accommodation; still they are both liable to the bank by reason of their being parties to the bill, and if Taylor & Sons have made an improper use of the paper, or its proceeds, the remedy is against them and not against an innocent holder. The statement by Green as to the character of the indorsement to Taylor & Sons and that it was for collection, if incompetent, and we do not think it was, did not determine or control the question of title to the bill, as the indorsement itself shows the purpose for which it was made. There are other errors assigned not necessary to be considered for the reasons already given.

We have again considered the question as to the ownership of the bill sued on, and there is no escape from the conclusion reached in the original opinion, unless we discredit the statement of the cashier of the Farmers' Bank and we find nothing in the record that would justify such a finding either by a court or jury. The question of notice has also been fully discussed, the proof showing notice or the existence of proper diligence in that regard by the holder or the notary, both as to the drawer and indorser. The object of Taylor was to relieve himself of liability for Timberlake and to accomplish this the appellant became the

indorser of the paper. While he was ignorant of the purpose in view or the nature of the transaction between Taylor and Timberlake, and the case may be one of hardship upon him, still the rights of the holder can not be affected by it and the judgment must be *affirmed*.

*Stevenson & O'Hara, for appellants.*

*McKee & Finnell, for appellee.*